The next case is In Re Asbestos Products Liability Litigation. Mr. Bograd. Thank you, Your Honor. May it please the Court, Louis Bograd, for Appellants William Schroeder et al. This is the third time we are appearing before this Court to discuss the implications of various actions taken by dependent shipping companies in the late 1980s and early 1990s in the Consolidated Mardock asbestos litigation in the Northern District of Ohio before Judge Lambros. Could you take us through, briefly if possible, but if not, through the various divigations these cases have taken over the years? I'm sure you're more familiar with it than we are, at least than I am, but in what really brought this home to me is that going back to the mid-80s when I was a state court trial judge, I was handling some asbestos cases. And when I mentioned that to my law clerk who was working on this case recently, that I had handled some of these cases in 1986, the quick response was, I wasn't born yet. Note to self, do not hire law clerks who remind you of your age. Yes, unfortunately we have that problem with associates as well, Your Honor, who remind me they weren't born when I started practicing. Yes, so that puts it in context. Walk us through the major procedural steps, if you would, that eventually get us here. Okay, you're not interested so much in the waiver at the moment, just the big picture? Right. In the end, it comes down to a pretty straightforward issue, I understand. I'll turn to the waiver in a second, but to answer your question, these cases were filed en masse, I think it would be fair to say, in the Northern District of Ohio before Judge Lambrose. And I knew Judge Lambrose. Note, I believe he's still around. They're not on the bench. And he assisted us in the Western District of Pennsylvania. I think we all know he well respected, nationally respected, trial judge. And he had thousands of these maritime asbestos cases. And this is, I gather this was before the MDL process existed, so that he had... The initial filings were before. Yeah, so he essentially created his own MDL here, so that rather than litigating these thousands of cases individually, he was processing them in large numbers. It was made easier by the fact that most of the plaintiffs were represented by a single law firm. Most of the defendants were represented by a single law firm. So that, and I think this is important in understanding what happened with the waiver issues. Frequently, it wasn't that filings were made in a specific case, but a filing would be made that applied to a large part of the MARDOC docket, and then often with an appendix that said this filing applies to all of these plaintiffs or all of these defendants. And that does have some implications for these three cases. I think it has many implications. Anyway, so the cases were proceeding before Judge Lambros for a while. A number of the defendants contended from the beginning that the court lacked personal jurisdiction over them. It was, I believe, 1989 when Judge Lambros finally considered the personal jurisdiction issue, decided that defendants were correct, that the court lacked personal jurisdiction over many of them, but also concluded that the correct remedy for that problem was not dismissal, but transfer under 1406 or 1631 to a jurisdiction that had, that would have had personal jurisdiction. Now, that would have had the effect of breaking some of these cases up into multiple pieces, because you had multiple defendants, as you do in a lot of asbestos cases. And it may be that there was no single jurisdiction that would have had jurisdiction over all of the defendants in a case. So it would have involved some separance and separation. And the defendants said, Your Honor, we are sorry. We disagree with your rule. We agree with your ruling that there's no personal jurisdiction. We strongly disagree with your ruling to transfer rather than dismiss. But if that's your intention, we may wish to be here, to remain here and waive personal jurisdiction, rather than have these cases split up and litigated in lots of different jurisdictions. Long story short, and I can go into the details down the road, a process was eventually hit upon where defendants were told that they had a fixed period of time in which to decide whether to waive personal jurisdiction, and were separately told that they could waive personal jurisdiction by filing an answer in the court, that the answer was, in effect, to concede that you wish to be there. Now, defendants tried to have it both ways. They filed answers that ostensibly preserve a personal jurisdiction defense, and simultaneously filed a request with Judge Lambros to certify an interlocutory appeal. Although you would agree, I assume, that our case law makes clear that the filing in and of itself of an answer is not dispositive. Well, I don't think your case law has actually, I don't believe either of the prior two cases have answered that question in this jurisdiction. The prior two cases were not presidential They're not. They're not. But, I mean, as a general principle, the mere filing of an answer, I should say mere, the filing alone of an answer is not going to be dispositive. I would concur. And the federal rules allow you to challenge personal jurisdiction in your answer. They do, and the problem was that we had a situation here, and I'm sorry, I'm now getting away from Judge Smith's question about the overall, and I can see I'm going to quickly run out of time. Don't worry about the clock. Okay, the Judge Lambros clearly understood these answers to constitute waivers because he continued to litigate these cases for the next year and a half. He prepared a number of cases for trial. He eventually realized he had too many cases to try and announced that he was going to send a bunch of the cases off to be tried in the Eastern District of Michigan, which is another one of these incidents that gets described in the papers. He did send some of them to Michigan where the defendants objected and the cases came back to him. Any of these three in that batch? Not in that. These three were not. Okay. And ultimately, ultimately, the cases were still sitting before him when, and there was a whole bunch of Sixth by the defendants. Ultimately, the cases were still sitting before him when the asbestos MDL was created in this circuit and the cases were transferred here. The short answer to what happened to the cases after that time, since that was 1991, is the asbestos stock was very large and the MDL judge put these cases basically into the deep freeze until just a few years ago while dealing with many of the other asbestos cases. So that's the shorthand version of what transpired. To what extent, if at all, and I think this gets to where you want to go, does this case, and I know they're not precedential, but to what extent, if at all, do these three cases differ from Blue and Braun? They differ in only one relevant, one respect, and we would submit, Your Honor, that that respect is not relevant, should not lead to a different result. All of these cases were part of the motions of the hearings in 1989, the motions practiced to dismiss where the judge said, No, I'm not going to dismiss, I'm going to transfer them for one of personal jurisdiction. All these cases were part of the answering process, just like the cases in Braun and Blue. All of these cases were part of the plaintiffs to transfer in total when the plaintiffs said, Well, we don't want to have to transfer some and not others, and the defendants opposed and said, Well, we waived our jurisdiction so we can stay here. We don't want it transferred. And that was said. That was basically said. Yeah, that is said in quite explicit terms. I've got the quotes in my notes. But yeah, so these cases were subject to that motion. The only thing, the only difference is that the 44 cases that when Judge Lambros got to his first trial settings, when he had the 44 cases that he wanted to send to Michigan for trial because the resources in Cleveland were just too taxed, the cases in Braun and Blue were in that 44. These cases were not. But every one of the defendants before the court here was in one or more of those 44 cases. And again, to go back to the point I made at the beginning, the way the pleadings occurred in these cases, it's not that they filed, they made some different statement about waiver in Braun than they made in Schroeder. They filed an answer. The documentation is exactly the same. The only difference is that technically these cases, those proceedings related to the Eastern District of Michigan are not part of the record in this case. I hope that's clear. Anyway, to our mind, defendants made, Judge Lambros clearly understood that these cases had the personal jurisdiction been waived. If not for that, he would have had no authority to continue to litigate the cases after January 1990. And yet he continued to work up the cases for trial. He moved them forward. He entertained the motion for transfer in toto. And defendants say, well, they didn't waive. They just wanted to get this case up on appeal to the Sixth Circuit. But the fact is, on a transfer motion, the wait is to object to transfer. And the first way it would have been to ask for an interlocutory appeal, as they did. But once that was denied, the opportunity they would have had to argue that the cases should have been dismissed, not transferred, would have been an appeal from the transferee court after a resolution on the merits, after the cases had been transferred. The Kalama, if that's correct? Kalama. What bunch of cases does that appeal involve? Again, Your Honor, and we would submit that we believe Kalama's wrongly decided. Because if it's not, you're inviting us to create a circuit split, aren't you? Yes, Your Honor. Although I don't think it's a circuit split that I would envision meriting a cert review. I mean, it's a... You never think that far ahead. It's a factual... And I should say, even when we talk about it as a circuit split, even the panel in Kalama recognized that it was a perfectly reasonable reading of all of these documents to conclude that, in fact, the defendants had waived. They merely concluded that, in their view, it was not an abuse of discretion for Judge Kalama. We think that's wrong, partly for a lot of the case reasons, partly in the interest of justice. But they did not... They agree with us. They did say that they distinguished brown and blue and said, well, those cases involve the 44 cases that went to Michigan, but they don't really speak to why that should matter. And indeed, if we look... I won't bore you with all the quotes all the way through this record, but let me just direct you to a couple of things in the record. First, as I said, all these cases, including the cases in Kalama, were subject to our motion, our plaintiff's motion, to transfer in toto, when we didn't want the cases to be split up. Thompson-Hein filed a response on behalf of all of its clients that were subject to non-resident defendants, although not subject to personal jurisdiction of this court, nevertheless agreed to waive the personal jurisdiction defense as the quid pro quo to avoid the expense of litigating these cases in as many as 13 different districts simultaneously and to take advantage of the consolidated handling of this court. They also said some defendants elected to waive that valuable due process right and submit themselves to the due process right so as to keep all cases against them in this district court. Now they do, are extraordinarily vague about which defendants, but this was a document filed on behalf of all of their clients, all of whom had answered. And there's nothing in the record that would have constituted a waiver other than the prior answers themselves. Likewise, on the transfer to Michigan, as I said, every one of these defendants was involved in the transfer in one or another of the cases that were going to be transferred to the Eastern District of Michigan. All of them, on behalf of all of them, Thompson-Hein said, we did not agree or concede to trials of any of these cases in Detroit. We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here in Cleveland. And again, they can't point to anything in the record that constituted a waiver just as to those 44 cases that was distinct from their uniform practice regarding these defendants across the Murdoch documents. So you want us to impute to the position they took relative to the Michigan cases, to these cases? Your Honor, I don't think you have to because I think the answers and the response to the motion in toto are sufficient. But how and why do we do that? Well, I think you would, Your Honor, because of the manner in which Murdoch was litigated, where defendants, it would be one, I would agree with you that, you know, if I take a position on behalf of one client in one case, and then I'm up here again in the next case and taking a contrary position, I would be offended if you were to say to me, well, you can't take a position, Mr. Bograd, you just took the opposite position on behalf of your other client. Yes. But remember here that all of these actions took place in court filings that were filed collectively. They were not filed on behalf of Mr. Braun, Mr. Blue, Mr. Schroeder. They were filed, you know, Matson Navigate Steamship Company filed an answer that it applied to a thousand separate cases. And they filed a brief on behalf of all their cases. Now, not the strongest argument. I understand, Your Honor, that we're not talking about a class action where people essentially give up their identity. We're talking about separately filed, albeit aggregated cases. But I think that the comments that are in the brief about opposing the transfer or that were made in the argument opposing the transfer to Michigan are references to filings and actions that the Thompson-Hine defendants had taken in other prior actions they had taken that applied across the board, not just to this particular case. Let me ask something that's just been a curiosity to me throughout looking at these cases. Would it be possible for any of these plaintiffs to refile if it were necessary in a court where personal jurisdiction exists, or are they all beyond the statute of limitations? Well, I would imagine they're all beyond the statute of limitations. Unless we have some jurisdiction with some very weird tolling provision. But these cases were in the late 80s, so it would be hard to imagine that they're... Mr. Schroeder lost on statute of limitations grounds in South Carolina. Yes, he did. And the... Sorry, I just lost... Oh, I just wanted to say, regarding in the Braun case, and I recognize that the plaintiffs in Braun were part of a Judge Ambrose made the following statement to suggest that the waiver applied to all of Thompson-Hine's clients. Attorneys from Thompson-Hine and Flory LLP represented that all of their clients did not agree or concede to trials of any of these cases in Detroit, and said to keep them in Cleveland. Now, again, there's plenty of ambiguity in this record. I do not want to suggest... Well, what's your other strongest argument on waiver? Well, you're out of Michigan. I think the Entoto argument, the response to the motion Entoto, which was on behalf of all of these plaintiffs, is very clear. The defendants said... Well, I read these quotes before. The defendants said that they had agreed to waive personal jurisdiction in order to stay here. But I also that the course of conduct with answering the complaint should really be sufficient. Well, but don't both Judge Rubino and the Sixth Circuit argue that the course of conduct on the part of the defendants cuts the other way? I mean, wasn't really that the basis of both of those rules? They certainly do take that position, Your Honor. And I concede that they included in their by answering, I will understand you to have waived, they did include a personal jurisdiction defense in their answer. I think that was because they were trying simultaneously to get an interlocutory appeal certified, which they did not succeed in doing. But clearly, Judge Lambros proceeded in these cases as if that had happened. Now, I have not spoken... And I'm happy to save this for rebuttal. I haven't spoken at the lexicon issue. If you can quickly at this point. Quickly, Judge, 1406 and 1631 express a preference for transfer over dismissal of the case. The Supreme Court said that in Goldlauer that, you know, the generally speaking, we don't want to punish plaintiffs for an inadvertent mistake about where they file a case. The cases should be... The preferred remedy in the interest of justice should be transfer rather than dismissal. We suggested that to Judge Rubino here when he revisited the question. He said he thought that lexicon precluded that remedy. We said, well, no, lexicon may require you to send it back to Ohio, but there's nothing that would preclude you from transferring it back to Ohio with a recommendation that it be sent to a jurisdiction that had personal jurisdiction over the defendants. And indeed... On lexicon, would it go to Ohio or would it go to the panel? Right, go to the panel, which would send it back to Ohio. But we could send it back to Judge Lambros or whoever's now got that docket to say with a recommendation that he now go ahead and do what he didn't ever finally do in 1989 and transfer to a jurisdiction that had personal jurisdiction for trial. And indeed, in the Musselman case, which is referenced in the briefs, Judge Brano had done exactly that in a separate case where the case had been filed in Delaware that he thought involved unresolved questions of Arkansas law. So even though he technically had to send it back to Delaware, he thought that we wanted an Arkansas court to decide the underlying legal issue, and he sent it back with a recommendation that it be transferred to Ohio. And I think we think that would have been... Even if you don't accept the waiver arguments, and I think you should, we would say that you should... That the remedy he adopted was the incorrect one. Thank you. Thank you, Mr. Gregg. We'll have you back on rebuttal. Mr. Henderson. Good morning, your honors. May it please the court, I'm Harold Henderson on behalf of the appellees in this case. We believe under this court's highly deferential abuse of discretion standard of review, this court should affirm the personal jurisdiction dismissal orders below because the MDL transferee court correctly found that these non-resident appellees did not waive or forfeit their personal jurisdiction defenses, and the findings and facts of the judge below were reasonable and supported by the evidence. The three cases before this court today do not share the procedural history involved in the two prior non-presidential opinions of this court, which I guess we would refer to as either brown and blue. Those two opinions focused on two specific events in each case, and those events were confined to oppositions to transfers of 44 cases from the Northern District of Ohio to the Eastern District of Michigan. And that's the only factors that drove those two opinions. The cases before this court were not among those groups of 44 cases, and therefore the discussion dealing with transfers of cases to Michigan is irrelevant. And that's essentially what the Sixth Circuit found in the Kalama opinion from last year. These cases share the same procedural history as those cases involved in Kalama, where the Sixth Circuit affirmed the waiver of personal jurisdiction. This court should reach the same result as in Kalama. Is there one jurisdiction where all three of these cases a court would have in prosodium jurisdiction? At this stage, I do not know, Your Honor, but given that we only represent a limited number of potential defendants, and these cases started off with typically a hundred different defendants with many different law firms, including some different law firms representing ship owners. So the idea of could all of those defendants be found for these three, but again, knowing that you've got roughly three hundred defendants per case, it's unclear whether at this point there would be personal jurisdiction in any one federal jurisdiction. Mr. Henderson, the district court, or rather Judge Lambros, when he had these cases, entered a scheduling order regarding the filing of answers. Did he not? He did, Your Honor. And if I recall correctly, he said in that order that only those defendants over whom jurisdiction existed would be required to file answers. Did he not? That is what he said, Your Honor. So defendants then were under no obligation to comply with the scheduling order, were they? There's a bit of a history that is required in order to answer that question, Your Honor. The dockets... Well, the history, and you please do recite it, because as you know, from the outset of this argument, I've been interested in hearing that history. It's tangled as I saw it. But ultimately, it leads to the question of why did defendants opt to file answers? Given what the district court said. So you're free to provide us with history, but that's the question it leads to for me anyway. The specific answer to your question is, without an answer, one would potentially face an argument that you've defaulted. So it was an odd situation because the federal rules of civil procedure... And that's exactly what each of these appellees here did. It was a quandary posed by Judge Lambros' order. The order suggests you file an answer if you want to waive. Well, how do you assert your other defenses if you don't file the answer? At what point is the interlocutory appeal filed? There was a motion for an interlocutory appeal, Your Honor. Right. And Judge Lambros never ruled on that order. So we were in the situation... What question were you attempting to appeal from on that interlocutory appeal? The decision to split the cases and send them all over the country. Because the primary issue in a transfer is could the case have been brought against all of these defendants in the receiving court? And Judge Lambros never even addressed that issue. So the fundamental first step on this, whether or not cases could be sent someplace, is under 1404A, could the case have been brought in that court? Except if there's a waiver, does that query still become relevant? I'm sorry, Your Honor? If there's a waiver of impersonnum jurisdiction, do you still need to get into that query? The problem... Well, the issue was there was no waiver of personal jurisdiction, so we did need to get into that issue. And it... Judge Lambros thought there was, didn't he? I don't think so, Your Honor. There were things going on that were somewhat odd from a procedural perspective. But why would Judge Ambrose have entered one of those mass consolidated orders, Mardoch 41, that provided for the transfer of cases, including these cases, as I understand it? Now, why would he enter such an order to transfer the cases if he'd known that the defendants had waived? Forgive me, Your Honor, I'm going to have to locate 41. Given the number of orders that were issued, I'll have to make sure I am accurately addressing. I think it's at A419 of the appendix. That's correct, Your Honor. That's correct, Your Honor. Excuse me. Well, that was the order that you were referring to previously, Judge Smith, about setting up procedures, and it was essentially going to scatter cases throughout the country. And as I mentioned earlier, the opposition to that order focused on the fact that it  never addresses the fundamental question of, could the case have been brought in the receiving court? That was a fundamental flaw, and it's essential. One of the things, even though I believe all of the discussion dealing with transfers to Michigan are irrelevant, because these cases weren't, but in the oppositions there, there's a case cited from the U.S. Supreme Court of Hoffman versus Blaski. And that's an important case, because that case says, if a 1404A transfer occurs to a place where it could not have been brought in the first place, the receiving court does not acquire jurisdiction. So that's a fundamental step. If we reference Order 41, let me read to you some of the language from Murdoch Order 40. And as I have it, it's the court ordered, the parties who, upon consideration of their motions to dismiss or transfer, wish to remain in this jurisdiction, need only file answers to the complaint in order to remain in the Northern District of Ohio. If something else that the order said, given that, why wouldn't the subsequent filing of the answer be interpreted as someone saying, pursuant to Murdoch Order 40, okay, we want to remain here? Because under the federal rules of civil procedure, a U.S. District Judge does not have the authority to require a defendant to waive a defense, including personal jurisdiction, in order to file an answer. The Sixth Circuit addressed this directly in Kalama and points out that there is no authority. This may be what the judge said, but he did not have authority to require forfeiture of other defenses. So the ship owners were in a quandary, Your Honor. Well, but then the order that was filed pursuant to Murdoch 40, assuming it had that reservation of the defense of personal jurisdiction language in it, that would not be inconsistent with lexicon, would it? Because you're filing an order, but the order specifically reserves the right to contest jurisdiction. Did I hear Your Honor say lexicon? Yeah, well, I meant Kalama. Oh, well, in the Kalama opinion, the court said that the ship owners were within their rights to file answers that preserved the personal jurisdiction defense because the court lacked the authority that it. To issue order 40, you're saying the language in 40 that I quoted is basically an analogy. That's correct, because it is not authorized by the federal rules of civil procedure and Kalama directly addressed that point, Your Honor. Okay. Before I forget, just remind the court that there is a motion to dismiss the appeal filed by Marine Transport Lines. This is the appeal of Appellant Schroeder for lack of appellate jurisdiction based upon race judicata. That motion will be moot if this court affirms the orders below, but I do want to at least remind the court that it is before this panel for the resolution. So the basic issue of oppositions to various transfers, including the transfer in total, the focus of the ship owner's opposition to that, as I mentioned earlier, is the failure of the district court to take the fundamental step of determining whether or not the receiving courts were courts in which the actions could have been brought. So the discussion is legally, you don't have the power to do this. Other statements that crop in about some defendants had waived. In trying to reconstruct what happened almost 30 years ago, it's my understanding that that firm did file a motion, took several actions to point out individual consents to the Northern District of Ohio, and that's different. One of their consents is at Joint Appendix beginning page 1154. It is a specific consent for a limited number of defendants in a number of cases. And at the hearing of June 22, 1989, which begins at Joint Appendix page number 65, statements by those lawyers essentially say the kinds of things that Mr. Bograd is saying. But it was for a different law firm, for different defendants, not these appellants. There is no similar type document in the record that these defendants waived and consented to personal jurisdiction in the same sense that the Ray Robinson clients did in those two particular documents. Do I recall correctly or understand the record to reflect that after Judge Lambros ruled that he did not have personal jurisdiction, defense counsel later came forward or thereafter came forward and asked the court to rule on consolidation and severance issues? Consolidation and severance, I do not recall that, Your Honor. The discussion about Judge Lambros finding lack of personal jurisdiction occurred on October 31, 1989. There was a follow-up hearing in the month of November of 1989 where an attorney from Thompson Heine comes back and says our clients are not in a position to decide to consent to jurisdiction in Ohio. So I don't know if that's what Your Honor was What about the argument that you waived jurisdiction when you opposed the motion to transfer in total? Once again, Your Honor, the opposition was focused on the legal point that the judge had not examined could the cases have been filed or could they have been brought in the receiving courts. And that is an essential legal element under 1404A. So we were saying, Your Honor, by opposing the transfer in total, we're saying the plaintiff didn't examine whether the cases could be brought in the intended jurisdictions. And similarly, when Judge Lambros said that he was going to oppose the motion. We were not, we were consistently opposing unlawful judicial actions or actions that were taken without dotting the legal I's and T's before being taken. For example, that underlying issue of when plaintiffs say let's transfer everything in total, including people who were subject to personal jurisdiction in Ohio, without ever looking to see what the receiving court and a place in which the action could have been brought, that violated 1404A. When Judge Lambros said I'm going to send the cases scattered throughout the country, I think there were something like 17 jurisdictions eventually mentioned, Judge Lambros likewise did not examine were the receiving courts places in which the actions could have been brought. A fundamental element under 28 U.S.C. 1404A. You're suggesting there may not be any place. We just don't know, but there may not be any place given the number of defendants per case in which an action could be brought. That's certainly possible, Your Honor. And the defendant's transfers. The position was there's no personal jurisdiction. You should dismiss. And that did not occur until Judge Rubino dealt with that. I know you never asked for any transfers, but it seems at least a tad incongruous that you actually opposed the transfer to the MDL in the Eastern District and said, in effect, we'd rather stay in the Northern District of Ohio. Well, it wasn't that we wanted to stay in the Northern District of Ohio. The preliminary statement is that we opposed the creation of an MDL because it was going to involve delay. Then alternatively, if you're going to have an MDL, do it in Ohio. Recall that an MDL court has jurisdiction that's different than a U.S. District Court. An MDL court can receive cases from all over the country. So individual jurisdictional issues are much different for a multidistrict litigation than they are for a district court, which has the cases in the first instance. And personal jurisdiction is a major issue in the cases brought in the first instance. Why not transfer back to the Northern District of Ohio instead of dismissing? Why not do that? Judge Rubino appropriately addressed that in his opinion, that these cases were brought in a jurisdiction where there was never really any hope of getting personal jurisdiction. Cases were in the federal court system for over 30 years, and given the fact that these could never have been dealt with in the Northern District of Ohio, it's within his discretion to say dismissal is appropriate rather than transfer. And as the Sixth Circuit held in Kalama, that was an appropriate exercise of discretion. So that's the question before. And I would hope, Your Honors, that you would see it the same way that the Sixth Circuit did in the Kalama case. I see my time is up. If there are no additional questions, I will be seated. Thank you, Your Honor. Thank you very much, Mr. Henderson. Belgrad, you have rebuttal. I have to say, I don't envy either of you attorneys doing this mess. I don't envy either of you gentlemen or the folks that you're working with. This is a Rubik's Cube of jurisprudence. It certainly is, Your Honor. I'll try to be brief, Your Honor. First, I just want to say that Mr. Henderson's suggestion, which was also in the Sixth Circuit ruling, that somehow Judge Lambros was trying to condition the filing of the answer on the waiver of the personal jurisdiction defense is a complete red herring and is ridiculous. He had already agreed with them that there was no personal jurisdiction. That's why he was going to transfer the cases somewhere else. He said, if you don't want me to transfer these cases somewhere else, answer the complaint. Does the record show some equivocation on the part of these defendants and counsel after he had made that determination? There was back and forth, as I recall, between the court and defense counsel concerning discussions with clients. That's all before January 5th, Your Honor. Before the ruling. Right. In the colloquies in both the October and November 89 hearings, Mr. Murphy, I believe, for Thompson-Hine keeps requesting additional time, saying he needs to consult with his clients. It's hard to tell. But he agreed that it would be simpler to just answer rather than having to file a separate jurisdictional waiver. There is nothing in the record after January. Well, that's what I was going to say. Is there ever any answer that a consensus has been reached among the various defendants as to what they wanted the district court to do? Well, I don't think there was a question of consensus. But Thompson-Hine, on behalf of all of the clients here, anyway, filed its answer and, in our view, thereby accepted jurisdiction. As Your Honor correctly noted, if one reads Marduk 40 and Marduk 41, defendants for whom the court had already found there was no personal jurisdiction had no obligation to answer at all unless they wished to waive and remain there. On the issue of whether the correct remedy would have been to send it back, I think Judge Stranch, in her concurrence in Kalama, strongly expresses the belief that the option of returning the case to the transfer or court with a recommendation for subsequent transfer is an idea that should be considered in other cases, apart from Kalama. We think, in particular in this case, where whatever we can agree or disagree about what the record actually means as a legal matter, it's, I think, beyond question that Judge Lambros understood the defendants to have waived the jurisdiction. That's why he continued to exercise authority over the case. And the plaintiffs understood them to have waived their jurisdiction. The idea that after having their cases, having understood that jurisdiction had been waived, having their cases put in abeyance by the MDL court for more than 20 years, that they should wake up one morning and discover that now they're out of court and dismissed because of the personal jurisdiction issue that they thought was resolved in 1989. Let me ask a question to your colleague. If jurisdiction in the Northern District of Ohio wasn't waived, is there any place where, and maybe under the MDL rules now would be a different scenario, that we wouldn't have that problem now if it goes to MDL court? Well, I think, and I think under the modern MDL rules, the cases probably would have been filed in a different way. People wouldn't have felt the need to file with 50 defendants on a single case. They could have filed each in an appropriate jurisdiction, so that may be a historical artifact. I also want to just respond to one thing my colleague said. He suggests that that reference to waiver in the response to the motion to transfer in toto was not about his client. It's about this other law firm that had explicitly waived personal jurisdiction. I think, to be perfectly candid, Your Honor, that seems extremely implausible that both, first, that Thompson-Hein would take it upon itself to opine on the interests of somebody else's clients regarding a motion to transfer, but also their suggestion is that those other clients waived in order to be able to keep the cases consolidated, and the whole point of the motion in toto was to prevent piecemeal adjudication. So, I don't think there's any way in which that's a plausible reading of that particular filing. Thank you, Your Honor. Thank you very much. You're most welcome. I would ask that a transcript of this oral argument be prepared, please. We thank counsel for their very helpful arguments, helpful not only on the legal issues, but on trying to untangle the procedural history here, which requires some basic understanding before one can eventually reach the issues presented. Thanks very much. We'll take